## UNITED STATES *v.* HOM HING.

*(District Court, N. D. New York. January 6, 1892.)*

CHINESE EXCLUSION ACTS—POWERS OF UNITED STATES COMMISSIONER—DEDIMUS POTESTATEM.

The provision made by the Chinese exclusion acts, (22 U. S. St. at Large, p. 58, § 12, and 25 U. S. St. at Large, p. 476, § 13,) for the examination before United States commissioners of Chinese persons alleged to be unlawfully in this country, clothes them with a jurisdiction which is entirely independent of the district court; and that court has no power to issue a *dedimus potestatem* to take testimony to be used in such an investigation, since Rev. St. U. S. § 866, authorizing the issuance of such a commission by the federal courts "in any case where it is necessary in order to prevent a failure or delay of justice," applies only to cases of which those courts have jurisdiction.

At Law.

This is an application for a commission to take testimony of witnesses residing in San Francisco in a proceeding under the Chinese exclusion acts, pending before Edward L. Strong, a United States commissioner at Ogdensburgh in this district. The affidavit upon which the motion is based is not entitled in the United States district court, but "before Edward L. Strong, United States commissioner." The motion is made at a special session of the district court. The proposed order is entitled "At a special term of the United States district court," it directs that a *dedimus potestatem* issue, that it be returned to Commissioner Strong, and

"that the testimony so taken may be introduced in evidence before said United States commissioner on the trial of this action before him with the same force and effect as if the witnesses had been personally examined before him in open court."

*D. S. Alexander,* U. S. Dist. Atty., for the motion.

*Daniel Magone* and *C. A. Kellogg,* opposed.

COXE, J. The defendant was arrested under the Chinese exclusion acts, charged with having come illegally into the United States, and brought before Commissioner Edward L. Strong. Testimony was given before the commissioner tending to show that the defendant was born in the United States and, for this reason, entitled to remain. A motion is now made at a special session of the district court for a commission to examine witnesses residing at San Francisco who will, it is alleged, disprove defendant's testimony as to the country of his nativity. It is conceded for the purposes of this motion that the papers show, sufficiently, the materiality of the San Francisco witnesses, and the objection that the proceeding is one where the defendant has a right to be confronted by the witnesses against him, is not pressed.

The motion is opposed on the following grounds: *First.* Under section 866 of the Revised Statutes the court has not the power to issue a *dedimus* for the purpose of taking testimony in a cause pending in another tribunal. *Second.* That the commissioner has exclusive jurisdiction of the investigation in question free from the direction and control of this court which has not the power to direct what testimony he shall receive. *Third.* That the proceeding before the commissioner is a statutory proceeding and not a trial and there is no power in the court, or elsewhere, to order that the testimony shall be taken by commission. *Fourth.* That the proceeding is summary and, even if the power existed to issue a *dedimus,* it should not be exercised where the defendant will be deprived of his liberty pending the return of the testimony.

The only provision of the act of May 6, 1882, (22 St. at Large, 58,) applicable to the point in controversy is as follows:

"And any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came, by direction of the president of the United States, and at the cost of the United States, *after being brought before some justice, judge, or commissioner of a court of the United States and found to be one not lawfully entitled to be or remain in the United States.*"

Section 12 which contains the foregoing language was amended by the act of July 5, 1884, (23 St. at Large, 115.) The amendment does not change the language in italics above quoted.

Section 13 of the act of September 13, 1888, (25 St. at Large, 476,) provides as follows:

"That any Chinese person, or person of Chinese descent, found unlawfully in the United States or its territories, may be arrested upon a warrant issued upon a complaint, under oath, filed by any party on behalf of the United States, by any justice, judge, or commissioner of any United States court, returnable before any justice, judge, or commissioner of a United States court,

or before any United States court, and when convicted, upon a hearing, and found and adjudged to be one not lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came. But any such Chinese person convicted before a commissioner of a United States court may, within ten days from such conviction, appeal to the judge of the district court for the district. A certified copy of the judgment shall be the process upon which said removal shall be made, and it may be executed by the marshal of the district, or any officer having authority of a marshal under the provisions of this section."

This section, which provides for a hearing, a conviction, a judgment and an appeal, has recently been held to be in force by the district judges of Vermont and of the eastern district of Michigan. *In re Mah Wong Gee,* 47 Fed. Rep. 433; *U. S.* v. *Chong Sam,* Id. 878.

The foregoing are all the provisions of the Chinese exclusion acts relating to the powers and duties of circuit court commissioners. They are mentioned, with others, as judicial officers before whom the suspected Chinaman may be brought, but no additional or exceptional powers in conducting the investigation are conferred upon them. The investigation is to be carried on as other investigations are. As the acts in question do not clothe the court with power to issue a *dedimus,* where the investigation is proceeding before a commissioner, it remains to be seen whether such power can be found in any other provision of law. The taking of testimony by commission is a creature of statute, in derogation of the common law. A commission should never issue unless the authority is clear. Something more than a mere presumption is required. *Dwinelle* v. *Howland,* 1 Abb. Pr. 1; *Randall* v. *Venable,* 17 Fed Rep. 162.

Section 866 of the Revised Statutes provides that—

"In any case where it is necessary, in order to prevent a failure or delay of justice, any of the courts of the United States may grant a *dedimus potestatem* to take depositions according to common usage."

It is very clear that the words "in any case" do not mean broadly any case where one of the parties to a controversy desires the evidence of a foreign witness, but any case of which the court, granting the commission, has jurisdiction. The cause must be one pending in the court and not before some other tribunal or officer over whom the court has no power or control.

This is not a case where the court has referred the action or some part thereof to a commissioner to report his findings of fact and law. The commissioner in this proceeding is as independent of this court as he is of the court of queen's bench. Commissioner Strong has precisely the same power and authority, in the investigation now pending before him, that a justice of the supreme court would have in like circumstances,— no more and no less. For the court to undertake to direct the course of proceeding before him would be an unwarrantable interference which he would be justified in resenting, and particularly so in view of the appeal to the district judge permitted by the act of 1888.

The district attorney quotes with approval from the opinion of the court in *Chow Goo Pooi's Case,* 25 Fed. Rep. 77, as follows:

"The power exercised by the magistrate is a power summarily to investigate and determine the right of a person to enter or remain in the country,— a power sometimes conferred upon commissioners of immigration but by this law confined to a 'justice, judge, or commissioner.'"

He further compares the functions performed by the "justice, judge or commissioner" with those, which, by the same statutes, are conferred upon the collector of the port and those which by the "alien labor and immigration act" (26 St. at Large, 1084) are conferred upon "inspection officers."

This position is entirely correct. The investigation is summary and the functions of the commissioner are akin to those exercised by the collector and inspectors. But can it be contended that the court has the power to issue a commission in an investigation pending before these officers, in the one case to determine whether a Chinaman has a right to land and in the other to ascertain whether an immigrant is an idot or afflicted with a contagious disease? If such power has ever been exercised in these or similar circumstances I have been unable to discover it. It is freely admitted that no precedent for this practice exists and after a somewhat extended examination I have been unable to find an authority which contains the remotest hint that the court possesses such power.

It is, of course, unnecessary to pass upon the other objections urged by the defendant, further than to say that it would seem to be for the advantage of both parties—the defendant as well as the government—if the officers charged with the execution of these laws were invested with a discretionary power to issue commissions and act upon testimony taken *de bene esse.* The crude and obscure provisions of the sections quoted have already provoked a marked conflict of authority and involved the courts in a maze of perplexity and doubt. The law should be made plain and effective. At present it is neither. The motion is denied.

NOTE BY THE JUDGE. During the investigation of the questions presented by the foregoing motion I found it necessary to examine and collate many statutes conferring general and special powers upon circuit court commissioners. As there is often misapprehension regarding their powers and duties I have thought that the result of this labor might be of some interest, especially as I am not familiar with any extended collection of references on the subject. Section 627 of the Revised Statutes provides that "each circuit court may appoint, in different parts of the district for which it is held, so many discreet persons as it may deem necessary, who shall be called 'commissioners of the circuit courts,' and shall exercise *the powers which are or may be expressly conferred by law* upon commissioners of circuit courts." Commissioners of the circuit court have no powers, therefore, except such as are expressly conferred by law. The office was originally created by the act of February 20, 1812, (2 St. at Large, 679.) This act made it lawful for the circuit court "to be holden in any district in which the present provision by law, for taking bail and affidavits in civil causes, is inadequate, or on account of the extent of such district, inconvenient, to appoint such and so many discreet persons, in different parts of the district, as such courts shall deem necessary, to take acknowledgments of bail and affidavits." Rev. St. §§ 945, 1014, 1778. By the act of March 1, 1817, (3 St. at Large, 350,) the

authority of commissioners to take bail and affidavits in civil causes depending in the circuit courts was extended to the district courts. They were also given authority to take depositions under the thirtieth section of the judiciary act. Rev. St. § 863. By the act of August 23, 1842, (5 St. at Large, 516,) it was enacted that commissioners "shall and may exercise all the powers that any justice of the peace, or other magistrate, of any of the United States, may now exercise in respect to offenders for any crime or offense against the United States, by arresting, imprisoning, or bailing the same, under and by virtue of the thirty-third section of the act of the 24th of September, A. D. 1789, * * * and who shall and may exercise all the powers that any judge or justice of the peace may exercise under and in virtue of the sixth section of the act passed the 20th of July, A. D. 1790." An act passed July 28, 1866, (14 St. at Large, 343,) extends the powers of commissioners to the seventh section of the act of July 20, 1790. The second section of the act of August 23, 1842, authorizes commissioners to require a recognizance from witnesses to appear at the trial of the cause where the crime was committed on the high seas or elsewhere with the admiralty and maritime jurisdiction of the United States. Section thirty-third of the act of September 24, 1789, (the Judiciary Act,) referred to in the act of August 23, 1842, just quoted, provides "that for any crime or offense against the United States the offender may, by any justice or judge of the United States, or by any justice of the peace, or other magistrate of any of the United States where he may be found agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States as by this act has cognizance of the offense." Rev. St. § 1014. The sixth section of the act of July 20, 1790, (1 St. at Large, 133,) provides for a summons of the master of a vessel in cases of mariners' wages. The seventh section provides for the arrest and commitment of deserting seamen. Rev. St. §§ 4546, 4547. By the act of August 8, 1846, (9 St. at Large, 73,) commissioners are given authority to enforce the awards of foreign consuls. Rev. St. § 728. By the act of September 16, 1850, (9 St. at Large, 458,) commissioners are vested with the same power to take oaths, affirmations or acknowledgments under the laws of the United States as justices or justices of the peace of any state or territory. Rules five and thirty-five of the supreme court authorize the taking of bonds or stipulations in admiralty suits, before commissioners. They are empowered to compel witnesses to appear and depose to letters rogatory addressed to them from any court or foreign government. 10 St. at Large, 630. They are given cognizance of offenses against the elective franchise and civil rights of citizens. Rev. St. § 1982; 18 St. at Large, 335. The court is authorized to increase the number of commissioners for the purpose of enforcing the civil rights act. Rev. St. § 1983. The act of July 13, 1866, (14 St. at Large, 152,) empowers commissioners to issue search-warrants in internal revenue cases. Rev. St. § 3462. They also have authority to discharge a defendant imprisoned on mesne process in cases where he would be entitled to a discharge if process were issued from a state court. Act March 2, 1867, (14 St. at Large, 543.) They may discharge a poor convict after having heard and determined the matter. Rev. St. §§ 1042, 5296. They may hold to security of the peace and for good behavior. Id. § 727. They were authorized to take evidence and proofs of debt in bankruptcy. Id. §§ 5003, 5076. They also have jurisdiction in extradition cases if authorized by the court to act, (Id. §§ 5270, 5271,) and they may issue search-warrants in trade-mark cases, (19 St. at Large, 141,) and counterfeit money cases, (26 St. at Large, 743.) They may take affidavits in land-entry cases. 19 St. at Large, 121. Other statutes confer special powers upon commissioners for the District of Columbia and for certain territories, but these statutes are not of general interest.

To recapitulate and condense the foregoing provisions, it will be found that commissioners have authority as follows: (1) To take bail, affidavits, oaths, recognizances, affirmations, depositions *de bene esse* and acknowledgments in United States courts and under the laws of the United States and to compel witnesses to answer letters rogatory. (2) To exercise the powers of justices of the peace in arresting and holding to bail in criminal causes under the laws of the United States. (3) To summon masters of vessels in cases of mariners' wages, to arrest deserting seamen and to take bonds and stipulations in admiralty causes. (4) To enforce extradition treaties and the awards of foreign consuls. (5) To issue search-warrants in internal revenue, trade-mark, and counterfeit money cases. (6) To discharge defendants imprisoned for debt and poor convicts. (7) To hold to security for the peace and take evidence and proofs of debt in bankruptcy. (8) To determine the *status* of Chinese persons under the exclusion acts.