## UNITED STATES v. NGUM LUN MAY.

(District Court, D. Oregon. April 8, 1907.)

No. 4,790.

1. ALIENS—EXCLUSION—DEPARTMENTS OF GOVERNMENT—REVIEW OF ACTS.

The right to exclude or expel aliens from the territory of the United States is vested in the political department of the government, and is a right with which the judicial department can have nothing to do except as authorized by treaty or act of Congress.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Aliens, § 71.]

2. JURY—TRIAL BY JURY—DEPORTATION PROCEEDINGS.

Congress not having authorized trial by jury in proceedings for the deportation of a Chinese person, provided for by Act Cong. Sept. 13, 1888, c. 1015, 25 Stat. 476 [U. S. Comp. St. 1901, p. 1312], the right to a jury trial does not exist.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, § 104.

Right to trial by jury in federal court, see note to O'Connell v. Reed, 5 C. C. A. 603; Vany v. Peirce, 26 C. C. A. 528.]

3. ALIENS—CHINESE PERSONS—MERCHANTS—EVIDENCE.

In proceedings for the deportation of a Chinese person, evidence *held* insufficient to establish that he was a Chinese merchant when he came to the United States, and that he engaged in that line of business for some time thereafter.

James Cole, Asst. U. S. Atty.
Edwin Mays, for defendant.

WOLVERTON, District Judge. This cause is on appeal from the judgment of the United States commissioner directing the defendant to be deported to China. The defendant came into the United States about the year 1888, landing in San Francisco. His right to remain here is based upon the assertion that he was a Chinese merchant when he came to the United States, and that he engaged in that line of business for some time thereafter. He has no certificate showing his right to remain here, although he is at this time a laborer, engaged in laundry work. At the opening of the trial he demanded that he be accorded a trial by jury, insisting that it was his right under the Constitution and laws of the country. This brings on for determination the question whether the cause is one in which the defendant is entitled to a trial by jury.

There are certain matters appropriate for judicial cognizance, but which are not required, either by the Constitution or the law of the

land, to be so cognizable. As to such matters, it is within the legislative discretion of Congress to prescribe. It may leave them to the discretion and judgment of the administrative or executive functions of the government, or it may assign them for judicial determination by the courts of justice, and prescribe the mode and manner of procedure with respect thereto. The procedure is exceptional and special, and due process of law in the constitutional sense, or as applied in view of the common law, is not a necessary or essential adjunct, or demandable as of right. The Congress may require the observance of due process; so also it may prescribe a procedure without reference or allusion to the principle or the incorporation of it therewith. Murray's Lessee et al. v. Hoboken Land & Improvement Co., 18 How. 272, 15 L. Ed. 372. The right to exclude or expel aliens from the territory of the United States is vested in the political department of the government, and it is a right with which the judicial department has, and can have, nothing to do, except as authorized by treaty or by act of Congress. Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905.

Now, while it is true that the appeal under section 13 of the act of September 13, 1888 (25 Stat. 479, c. 1015 [U. S. Comp. St. 1901, p. 1317]), is to the District Court as contradistinguished from the judge thereof (United States, Petitioner, 194 U. S. 194, 24 Sup. Ct. 629, 48 L. Ed. 931), yet, the Congress not having provided in the act by which the procedure is prescribed for the court to follow for a trial by jury, the right to a trial in that mode does not exist. The function to be exercised by the court is one delegated to it by the Congress, is special, and is only to be exercised in the manner prescribed by the law delegating the authority, and the common-law or constitutional right of trial by jury does not attach; and, further, as was said in the case of Fong Yue Ting v. United States, supra:

"The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, has determined that his continuing to reside here shall depend. He has not therefore been deprived of life, liberty, or property without due process of law; and the provisions of the Constitution, securing the right of trial by jury, and prohibiting unreasonable searches and seizures, and cruel and unusual punishments, have no application."

See, also, In re Tsu Tse Mee (D. C.) 81 Fed. 562.

In view of these authorities, the demand of the defendant for a trial by jury must be denied.

Now, as it relates to the facts: The defendant testifies that he began work in the store of San Chung Lung, in San Francisco, immediately after his arrival, and that he continued in such employment for about 10 years. In this, however, he is certainly mistaken, because the firm was dissolved in about 1894, and he did not work there after that time. His employment in and about the firm was as porter. He says that he did nothing else, but claims that he did as other members of the firm did. The extent of his interest in the business was $500,

but, when pressed as to that, he says that he worked the first two years for wages, receiving $25 and then $30 per month, and that he did not become a partner until the expiration of that time. It appears that the defendant drew money from the store to the extent of about $50. Otherwise, he insists that he did not receive any of his wages, and that, when the store closed, he lost all that he had in the business. He produces one witness, a Chinaman named Ham Dock, who testifies that he (witness) was a member of the firm when the defendant first arrived in San Francisco, and that the latter began working therein. Witness remained with the firm about one year, and removed to Portland. Later he went back to San Francisco on two occasions prior to the closing of the store, and he testifies that the defendant was working in the store upon each occasion. Another witness, Charles Peck, testified that he saw the defendant about the store, and that he was one of the boys engaged therein.

To my mind it is very problematical whether the defendant ever had an interest in the store, as he alleges, or engaged in the mercantile business in this country. He first admits explicitly that his occupation about the store was as porter only, and then he testifies that the understanding was that the firm should pay him wages, which understanding existed throughout the continuation of the business. True, he says he received "profits" from the business; but, when he explains further that the firm paid him but $50 while he was engaged with them, and that he called that "profits," it is apparent that he did not know what was meant by the word, and that all he received was in the way of wages. At any rate, the showing fails to satisfy me either that defendant was a merchant when he came to the United States, or that he ever engaged in business here as a merchant, so that he has not established his right to remain in this country.

The judgment will therefore be in accordance with that rendered by the commissioner, and the defendant will be deported.